State v. Kendall.

mit the land to be subsequently sold and subsequent taxes to be paid by Shaffer.

AFFIRMED.

38  817
52  431

STATE OF NEBRASKA V. NERIAH B. KENDALL ET AL.

FILED JANUARY 4, 1894.  No. 5435.

1. **Obstruction of Water-Courses:** INFORMATION. An information sufficiently charges an offense under section 228 of the Criminal Code, where it charges the erection and keeping up of a dam in a stream whereby an artificial pond is raised and stagnant water is produced, whereby the air was, and now is, corrupted, offensive, and unwholesome, and manifestly injurious to public health and safety.

2. **It is not a fatal defect in an information** that it charges an offense with unnecessary particularity.

3. **Where words appear in an information which might be stricken out,** leaving an offense sufficiently charged, and such words do not tend to negative any of the essential averments, the state should, upon motion, be permitted to strike out such words.

4. **When an information proves upon trial to be defective,** the trial judge should inquire as to whether probable cause exists for holding the defendant, and in the exercise of a sound legal discretion may then either discharge him from custody or recognize him to answer at the next term of court.

EXCEPTIONS to the decision of the district court for Lancaster county, HALL, J., presiding. Filed by leave of the supreme court under the provisions of section 515 of the Criminal Code.

*N. Z. Snell, County Attorney,* and *Thomas Ryan,* for the state.

*Charles O. Whedon,* for defendants.

56

IRVINE, C.

The defendants were informed against for that they, "on the 18th day of November, 1889, and continuously from that time until the 15th day of May, 1891, did and now do unlawfully and injuriously keep up a mill-dam across a stream of water known as 'Salt creek,' in said county and state, and thereby raised and now raise by means of the keeping up of said mill-dam an artificial pond which is situated near and adjacent to a common highway and the dwelling houses of divers persons who occupy the same with their families; and that the said artificial pond so raised by said mill-dam as aforesaid produced, and now produces, stagnant, corrupted, and impure waters, whereby the air in and around said dwelling houses and highway, and over and for a long distance around said artificial mill pond and stream known as 'Salt creek,' became, was, and now is corrupted, infected, offensive, and unwholesome, and manifestly injurious to the public health and safety, to the common nuisance of all the people." To this information a plea of not guilty was entered, and upon the trial the defendants objected to the introduction of any testimony for the reason that the information did not state facts sufficient to constitute any offense punishable by the laws of the state. This objection was sustained. Thereupon the state asked leave to strike from the information the words "whereby the air in and around said dwelling houses and highway over and for a long distance around said artificial mill pond and stream known as 'Salt creek' became, was, and now is corrupted, infected, offensive, and unwholesome." This motion was overruled. Thereupon the state asked leave to file an amended information, which would in substance be the same as the original, with the last words quoted stricken out. This motion was overruled. Finally, the state asked that the defendants be required to enter into a recognizance to appear on the first day of the

next term of court, and not to depart without leave, and to abide the further order and judgment of the court.    This motion was also overruled.    The court then instructed the jury to find for the defendants, which was done.    The state brings the case here upon exceptions according to the statute.

The first question presented is as to the sufficiency of the information.    Section 228 of the Criminal Code is as follows: "If any person shall build, erect, continue, or keep any dam or other obstruction in any river or stream of water in this state and thereby raise an artificial pond or produce stagnant waters which shall be manifestly injurious to the public health and safety, every person so offending shall be fined," etc.    We think that the information stated an offense against this statute.    The argument is first made that the information did not state that the pond was manifestly injurious to public health and safety, but that because of the pond the air became so.    This is a clinging to the bark.    By section 251 of the Criminal Code it is provided that every law upon the subject of crime shall be construed according to the plain import of the language without regard to the distinction usually made between the construction of penal laws and laws upon other subjects.    The gist of the offense created by section 228 is the creation or maintenance of an artificial pond or stagnant waters to the manifest injury of the public health and safety.    The means by which such waters may become so manifestly injurious may be varied.    Usually in charging a statutory offense it is sufficient to follow the terms of the statute.    The information would have been sufficient had it charged the erection of the dam whereby an artificial pond and stagnant waters were created to the manifest injury of the public health and safety, without charging the manner in which public health and safety were affected.    It would be a narrow and indefensible construction of the statute to say that in order to constitute the offense, the waters themselves must be directly injurious to public health

or safety. If such injury results directly or indirectly from the acts complained of, the offense is complete, and the averment in the information of the means by which the waters became so injurious, while it might require proof according to the averment, did not vitiate the information, and was to the advantage of the accused rather than to his prejudice. Section 412 of the Criminal Code provides that no indictment shall be deemed invalid for any surplusage or repugnant allegation where there is sufficient matter alleged to indicate the crime or person charged nor for any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits. It is next argued that the information was defective because charging the erection of a mill-dam. Chapter 57 of the Compiled Statutes provides for the erection of mill-dams, whence it is said that the erection of a mill-dam being a lawful act, section 228 of the Criminal Code cannot refer to mill-dams. Chapter 57 of the Compiled Statutes, referred to, provides for an inquest by a jury. The jury is required to inquire, among other things, whether the health of the neighborhood will be injured by the stagnation of water, and whether such injury can be prevented; and by section 12 of that chapter the court is required to refuse permission to build such mill-dam if it appears that the health of the neighborhood will be affected. It is not therefore every mill-dam which is lawful, but the right to construct a mill-dam is subject to this qualification, among others, that it must not amount to a public nuisance injurious to health. The provision of the Criminal Code, already referred to, requiring a reasonable, and forbidding a strict, construction of penal statutes, requires that we should apply section 228 of the Criminal Code to mill-dams as well as to other dams, provided they are manifestly injurious to public health and safety. We therefore think that the information charged an offense and that the court should have overruled the objection to the evidence. What we

have already said disposes of the two exceptions which go to the overruling by the court of the state's motion for leave to strike out the words already referred to, and to amend the information. We have already said that an information omitting those words would have been sufficient. Had they been of such a nature as to negative the other averments, it is probable that the state ought not to have been permitted to strike them out, but inasmuch as they were entirely surplusage, the state should have had such leave.

The only other question of importance is the refusal of the court to require that the defendants should be held to bail after their objections to the evidence were sustained. Section 480 of the Criminal Code provides that when it shall appear at any time before the verdict that a mistake has been made in charging the proper offense, the accused shall not be discharged if there appear to be good cause to detain him in custody, but the court must recognize him to answer to the offense on the first day of the next term of said court; and section 481 provides that when a jury has been impaneled in a case contemplated by the preceding section, such jury may be discharged without prejudice to the prosecution. The latter section shows that the former is intended to apply, not only where the defect is taken advantage of before trial, but that it also applies to defects objected to upon the trial and before verdict. The words of section 480, limiting the right to recognize the defendants to cases where there appears to be good cause to detain him, show that something is left to the discretion of the trial court. There is no reason why a defendant held to answer for a criminal offense should be forever discharged because of a formal defect in the indictment or information; and for this reason the trial judge is permitted, in the exercise of a sound legal discretion, either to discharge the defendant or to recognize him to appear at the next term of court. He becomes in such a case a *quasi*-examining

magistrate.   In this case no evidence at all affecting the merits of the case had been received.   It would seem that the court should have proceeded, even had the information been defective, far enough to ascertain whether there was probable cause for a prosecution under a proper information.   In a case where it appeared that a defective information could not be remedied in conformity with evidence it would undoubtedly be proper for the court to absolutely discharge the defendant.   As there was no evidence received in this case we cannot say that the court abused its discretion.   The error lay farther back, to-wit, in excluding the evidence offered.   All that we can do in passing upon this exception is to say that it becomes the duty of the trial judge, when an information is found defective, to make inquiry as to the probable guilt of the accused of an offense which might properly be charged against him, and after such inquiry, to exercise his discretion as to discharging the person or holding him to answer at the next term of court.

EXCEPTIONS SUSTAINED.