FRANK J. SIECK v. STATE OF NEBRASKA.

FILED SEPTEMBER 26, 1914. No. 18,431.

1. **Criminal Law:** FORMER JEOPARDY. In a prosecution for felony, if the information is quashed "at any time before the verdict" because "mistake has been made in charging the proper offense," the court should determine whether "there appear to be good cause to detain (the defendant) in custody." For that purpose he may hear further evidence, if necessary, and recognize the defendant "to answer to the offense on the first day of the next term of such court." In recognizing defendant to appear at the next term, the judge acts as examining magistrate, and, if he discharges the defendant without so recognizing him, such discharge will not be a bar to arrest and examination before another magistrate. Rev. St. 1913, sec. 9121.

2. **False Pretenses:** EVIDENCE. In a prosecution for obtaining money by false pretenses under section 8874, Rev. St. 1913, it is not necessary to prove that the person defrauded intended to pass the title and property in the money to defendant; it is sufficient in that regard if he intended to, and did, deliver the money to the defendant, and that the defendant obtained the same by false pretense or pretenses with intent to cheat or defraud such person.

ERROR to the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Affirmed.*

*R. H. Hagelin* and *J. L. Caldwell*, for plaintiff in error.

*Grant G. Martin, Attorney General*, and *Frank E. Edgerton, contra.*

SEDGWICK, J.

The defendant, who is plaintiff in error here, was convicted in the district court for Lancaster county of the crime of obtaining money by false pretenses, and sentenced to confinement in the penitentiary for from one to five years. He has brought the case to this court upon petition in error.

1. The trial court sustained a general demurrer to the defendant's plea of former jeopardy, and it is now insisted that the ruling was erroneous. The plea alleged

that defendant had before been put upon trial for the same offense, and that after the jury had been impaneled, and the cause had been stated to the jury by counsel, and several witnesses had been sworn and testified in behalf of the state, the information was quashed because it failed to state the facts necessary to support a conviction, and that the defendant then asked that the jury be instructed to find a verdict of not guilty, which was refused, and the court discharged the defendant. Section 9121, Rev. St. 1913, provides: "When it shall appear at any time before the verdict that a mistake has been made in charging the proper offense, the accused shall not be discharged if there appear to be good cause to detain him in custody; but the court must recognize him to answer to the offense on the first day of the next term of such court; and shall, if necessary, likewise recognize the witnesses to appear and testify." The contention is that the words, "the accused shall not be discharged," are mandatory, and therefore such discharge was equivalent to an acquittal. If it appear before "verdict that a mistake has been made in charging the proper offense," the court should determine whether "there appear to be good cause to detain him in custody." If there is already sufficient evidence before the court, the judge should act accordingly; if not, he may as an examining magistrate take further evidence. *State v. Kendall,* 38 Neb. 817. In this inquiry the judge acts only as an examining magistrate, and, if he mistakenly discharges the accused without determining whether there is probable cause to hold him for trial, it will not bar an examination before another magistrate. *In re Garst,* 10 Neb. 78. The court therefore was right in sustaining the demurrer to the plea, and also in overruling defendant's motion to quash the information for the same reason.

2. The defendant objects to a supposed statement of the county attorney in his argument to the jury. He does not state the place in the bill of exceptions where any such statement as he discusses appears to have been made by the county attorney, and we have not observed any record of such statement to the jury.

3. It is alleged that the defendant and one Himber went to the home of Charles and Theodore Strelow and represented themselves to be a judge and sheriff. They presented a paper purporting to be a warrant for the arrest of the Strelows upon a charge of murder, committed many years before. They obtained $230 from the Strelows as bail or security for appearance in court in Lincoln for trial on the following Monday.

The information upon which the defendant was tried contained two counts, one charging larceny of the $230, and the other charging obtaining the same by false pretenses. The jury found defendant guilty of obtaining money under false pretenses, and not guilty of the crime of larceny. It is now contended that the evidence will not support the charge of obtaining money by false pretenses; that if any crime was committed it was larceny. Charles Strelow testified: "Q. What did the men do after they hitched their horses? A. They came in, and he says, 'I got here something for you.' Q. Who was he talking to? A. To me, and—what is it? 'Well,' he says, 'I am the sheriff and I take you for murdering a man 30 years ago.' * * * Then he said, 'If you can give us $500 cash bond, probably we will let you go.' Well, we agreed to that, but I said I did not know how much I have. 'Well, how much you will have?' 'Well, I don't know,' I say. And I spoke that over with my brother, and we agreed, me and my brother, to give him that, what we had. That gave us a chance until Monday, he said we can come in Monday and you get your money back."

This evidence is substantially without contradiction, and establishes, it is contended, that the owners of the money did not intend to part with the title, and consented only to part with the possession of the money until the following Monday, and as the defendant did not obtain the property in the money itself, but only possession thereof, by the representation made, he was not guilty of obtaining money —that is, the title and ownership thereof—by false pretenses, but if defendant intended to afterwards convert

the money to his own use, and did so convert it, it is argued that he was guilty of larceny only. There are many of the earlier cases which have drawn this distinction between the common law crime of larceny and the statutory crime of obtaining property by false pretenses. These decisions are not applicable to our statutory crimes. Section 8874, Rev. St. 1913, provides: "Whoever by false pretense or pretenses shall obtain from any other person, corporation, association, or partnership, any money, goods, merchandise, credit or effects whatsoever with intent to cheat or defraud such person, corporation, association, or partnership of the same, * * * shall be imprisoned in the penitentiary not more than five years nor less than one year; but, if the value of the property be less than thirty-five dollars, the person so offending shall be fined in any sum not exceeding one hundred dollars or be imprisoned in the jail of the county not exceeding thirty days and be liable to the party injured in the amount of damage sustained."

The same acts may constitute two or more different crimes, and there is no principle of law or public policy in our state that will forbid the legislature to make the act of obtaining the possession of the money or property of another by false pretenses, and with intent to cheat or defraud such person "of the same," constitute the crime of obtaining by false pretenses, although the person so defrauded did not at the time consent to the transfer of the title and property in the money, but supposed that the same money or a like amount would be returned to him. The fact that the defendant may have been guilty of larceny also is immaterial. If his intention and purpose are to obtain the property or money and convert it to his own use, and so cheat and defraud "such person * * * of the same," and he uses false pretenses to accomplish that result, and does obtain the money thereby, this is within the letter and spirit of the act, and there is nothing in the law or public policy of this state that prevents us from so construing it.

96 Neb. 50

The crime was flagrant, boldly conceived, and recklessly executed. We find no error in the record requiring a reversal, and the judgment of the district court is

AFFIRMED.

REESE, C. J., and ROSE, J., not sitting.